**EVANS v. JACOBS et al.**

No. 12396.

Court of Civil Appeals of Texas. Galveston.

April 10, 1952.

Rehearing Denied May 29, 1952.

Henry S. Paulus, of Yoakum, H. W. Wallace, of Cuero, for appellant.

Armond G. Schwartz of Hallettsville, Blair & Randle, M. B. Blair, of Austin, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the District Court of Lavaca County, Hon. Lester Holt presiding without a jury, which, reduced to its essential substance, was this: "* * * judgment for the cancellation and removal as cloud upon title a deed executed by Dora A. Jacobs, September 24, 1943, to defendant, D. E. Evans, * * * and which deed attempted to convey to D. E. Evans in fee after the death of the grantor, Dora A. Jacobs, a 45%₁₅ acres undivided interest in and to a 213-acre tract of land described in plaintiff's petition, and to convey to him in fee all of the right, title and interest she had in and to said 213 acres of land, which the will of Edward Jacobs, deceased, bequeathed to her only a life estate and which she elected to and did take during her lifetime, * * *."

The court filed comprehensive findings of both fact and law in support of its action, the controlling ones being these: (1) those of fact:

"5. Edward Jacobs, the husband of said Dora A. Jacobs, died September 3, 1941, leaving his will executed August 2, 1941, which was duly probated by the County Court of Lavaca County, Texas, on September 22, 1941. * * * (which) reads as follows:

"'Second: I give to my beloved wife, Dora A. Jacobs, all of household and kitchen furniture, one-half of all cattle, one-half of all money and one-half of all other personal property, whether it be my individual and separate property or our community property, same to be her property to do with as she may see fit and proper. And I give to my beloved wife Dora A. Jacobs my home place of 213 acres of land during her lifetime; this being my separate property.

"'Third: I give to each of my four children a one-fourth undivided interest in and to one-half of all cattle, one-half of all money and one-half of all of the other personal property I may own and be possessed of at the time of my death, so that McKinley E. Jacobs, Charles Jacobs, John A. Jacobs and Beatrice Inez Hoffman, my beloved children, will receive an equal share of same. I give to my beloved children McKinley E. Jacobs, Charles Jacobs, John A. Jacobs, and Beatrice Inez Hoffman all of the real estate I may own at the time of my death, other than the 213 acres homestead, to be their property in fee simple to do with as they may see fit and proper, so that each of them will receive one-fourth of same and at the time of the death of my beloved wife Dora A. Jacobs said homestead of 213 acres is to become the property of my said four children and they are to receive and equal one-fourth interest in same, to be the property of each of them in fee simple.'

"6. A total of 106%₂₈ acres of the 213 acres of land involved was the community property of Edward Jacobs and Dora A. Jacobs at the time of his death."

(2) those of law:

"1. The will of Edward Jacobs having disposed of all realty and personalty as a whole and having specifically included all of the community estate, Edward Jacobs thereby intended to dispose of his widow's community interest in the entire estate as his own and intended to put her to an election as to whether she would take under the will or under the laws of descent and distribution.

"2. The will of Edward Jacobs, deceased, required his widow, Dora A. Jacobs, to elect to take thereunder only a life estate in the 213 acres of land here involved."

In this Court appellant seeks a reversal through six main points of error, among others, attacking as being without sufficient evidence to support them, both the finding of fact and conclusion of law of the trial court to the effect that Dora A. Jacobs

elected to take under the will of her husband, Edward Jacobs, a life estate only in the 213 acre tract of land that had been their homestead during their marriage.

In doing so, he urges that each and all of these particular findings was either without sufficient evidence, or any evidence, or was against the great weight and preponderance of the evidence touching it, to-wit:

(1) that Mrs. Dora Jacobs, after the death of her husband, Edward Jacobs, received under his will household furniture which belonged to himself and his deceased first wife, Inez Jacobs;

(2) that she (Mrs. Dora Jacobs), acting under the will of her deceased husband, took actual possession of the entire 213 acres, rented it, and received the rent from all of it;

(3) that she received valuable property from the estate of her deceased husband, under his will, which she would not have received, had she elected to take her legal rights independently of the will;

(4) that she, Mrs. Dora Jacobs, receipted for all rights and properties given her under the will of her husband;

(5) that she also permanently abandoned her legal rights to her rural homestead, before she made the deed to the appellant that is involved in this suit;

(6) that, as indicated, Mrs. Jacobs had elected to take property given her in the will of her husband, in lieu of her homestead rights and her legal community interest in the 213 acres of land.

Since appellant has properly invoked the exclusive authority of this Court to determine, upon appeal, whether a finding of fact of the court below is so against the overwhelming preponderance of the evidence as to be clearly wrong, it is more accurate to say that the sole question presented here is whether there is sufficient evidence to support the determinative finding below that Mrs. Jacobs did elect to take, under the will of her deceased husband, Edward Jacobs, a life estate only in the 213 acre tract of land involved.

The very able briefs and oral arguments from both sides have shortened the task of this Court in passing upon the controversy;

after reviewing the record, it cannot hold that anyone of the six attacked findings of fact was either without any evidence to support it or was so against the great weight of the evidence as to be wrong.

It is further determined that the judgment based upon the findings violated no legal right of the appellant.

As the briefs of both sides concede, the law arising upon the facts so determined is settled.

It is unequivocally declared in these holdings: Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Edsall v. Hutchings, Tex.Civ.App., 143 S.W.2d 700; Graser v. Graser, 147 Tex. 404, 215 S.W.2d 867; Lindsley v. Lindsley, 139 Tex. 512, 163 S.W.2d 633; Story v. Story, 142 Tex. 212, 176 S.W.2d 925.

It is true there were divergencies in the lines of the testimony—respectively presented by the opposing sides to the controversy—but few, if any, actual disputes between them as to the existence or not of any particular facts; wherefore, there were, on the whole, no such differences as did not clearly fall within the province of the trial court to resolve. Hence its determination thereof is just as binding on this Court, as would have been the verdict of a jury below, to the same purport. Rule 296, Texas Rules of Civil Procedure, subd. G., 1951 Supplement, note 2, and cited authorities.

It would be supererogatory to repeat here, to undertake an adequate resumé of the vast body of the testimony below; but, as seems to this Court, the quoted will itself well-nigh shows that Edward Jacobs must have intended to dispose of not only his own interest in the community property of himself and his wife, Dora, but of hers as well, and to make up for that deprivation, by providing benefits for her out of his separate property, which she would not acquire if she did not voluntarily decide to depend only upon his will.

This extract from the Supreme Court's opinion in the cited Graser v. Graser case, 215 S.W.2d 867, at page 870, declares the rule of law on that feature: " * * *

where a testator disposes by will of property not his own, and the will also provides benefits for the real owner which the latter would not otherwise enjoy, such owner may by express or implied election to take under the will, cause his own property in question to be treated as if it had passed by the will. * * * Avery v. Johnson, 108 Tex. 294, 192 S.W. 542, 544. * * *"

To the same effect are the Lindsley v. Lindsley, and Story v. Story, holdings, cited supra.

■ Without repeating it here, the direct testimony to the effect that Mrs. Jacobs did receive household furniture that belonged to her deceased husband and his first wife, of the witnesses, Mrs. Maud Harless, and her husband, Jack Harless, and that of McKinley E. Jacobs, the independent executor of Edward Jacobs' estate, to say nothing of the written receipt Mrs. Jacobs herself signed and acknowledged for record before her death, was alone sufficient to sustain the trial court's finding upon that feature.

The further finding that Mrs. Jacobs, following her husband's death, took possession of the whole 213 acre homestead tract of land, and received rents from all of it, is likewise supported by the testimony of the appellee, McKinley E. Jacobs, who was the lessee, and who paid the lease money therefor and occupied the property during the time called for therein.

The witness, Mrs. Beatrice Inez Hoffman, the stepdaughter of Mrs. Jacobs, testified in detail of just what property the latter had received from the left-over furniture and effects of her deceased husband, and to its value in fact; further, she and other witnesses, testified that they had been present and heard Mrs. Dora Jacobs say during the time she was receiving and using such furniture and collecting the leasehold rents from the 213 acre tract of land, that her husband's will had been fair and just, and that she was satisfied with it.

Furthermore, there was no dispute in the evidence that Mrs. Jacobs had receipted for all rights and properties given her under the will, as found by the trial court; as indicated, that document itself was shown to have been executed by her, before her death, and that it was put of record on September 24th of 1943.

Several witnesses testified in detail that Mrs. Jacobs, following the death of her husband, permanently abandoned the 213 acre homestead, and lived elsewhere the balance of her life; indeed, the appellant himself, in effect, admitted as much, and the testimony of the other witnesses upon that feature, including the appellees; McKinley E. Jacobs, Mrs. Beatrice Inez Hoffman, and Mrs. R. A. Kelton, who appeared to have had no connection with or interest in the controversy, furnished ample support for the trial court's finding that Mrs. Jacobs had permanently abandoned her legal rights to the rural homestead before she made the deed in suit to the appellant.

■ Finally, the evidence also shows, as the trial court specifically found, that Mrs. Jacobs, in so abandoning the homestead tract for good and all, must have been prompted and influenced by considerations other than the actual, or money value, of the estate, such as the good will and personal attentions to her of her stepchildren, the appellees in this cause. It is undisputed that she lived around, among, and near them, and that they and she mutually agreed that her husband's will had been just and fair to them all. Hence, that they had so lived under it.

If Mrs. Jacobs was so influenced and prompted, that, itself, was a legally recognized consideration to Mrs. Jacobs for having parted with her interest in the homestead tract. The law on that subject is thus stated in the cited Baldwin v. Baldwin case, 135 S.W.2d 92, at page 95: "In determining whether a surviving spouse receives a benefit under a will the court does not measure the relative values of the things received and those parted with. As stated in Dunn v. Vinyard, supra [Tex.Com.App., 251 S.W. 1046], 'To uphold an election the compensating thing need not be of value equal to that taken away. Smith v. Butler, 85 Tex. 126, 130, 19 S.W. 1083. It may be, and often is, true that the party making the election is prompted to do so by considerations

other than the value of the estate or property actually received under the will.'"

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.