**Mrs. Viola Walker MARSHALL, Appellant,**

**v.**

**Mrs. Erle Darnall LAND et al., Appellees.**

**No. 16857.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 24, 1967.

Rehearing Denied March 31, 1967.

Elvin E. Tackett, Ft. Worth, for appellant.

Douglas Riley, Jr., of Hassell & Riley, Dallas, for appellees.

DIXON, Chief Justice.

Appellant Mrs. Viola Walker Marshall, widow of W. E. Marshall, brought suit against her daughter, Mrs. Erie Darnall Land, her daughter's husband, Henry L. Land, and her granddaughter, Linda Darnall, appellees herein, seeking judgment for title to her one-half community property interest in shares of stock in Franklin Insurance Company.

Appellant alleges that without her knowledge her husband, W. E. Marshall, several years before his death had executed an alleged trust instrument naming their daughter Mrs. Land as Trustee and had transferred legal title to all the shares of stock to the named Trustee. She further alleges that said alleged trust instrument cannot have the effect of depriving her of her community interest in the property because it was not a gift *inter vivos* and because it was an illegal attempt by her husband to make a testamentary disposition of her community interest.

Both appellant and appellees filed motions for summary judgment. The motion of appellant was overruled. The motion of appellees was sustained.

The material facts are undisputed. Appellant and W. E. Marshall were married in the year 1905 and remained husband and wife until his death on August 4, 1965. During their marriage they acquired 760 shares of stock in Franklin Insurance Company. Over the years the number of shares had increased by reason of stock dividends and the splitting of stocks. They had acquired a value at the time of W. E. Marshall's death in 1965 of approximately $99,-957. It is undisputed that all these shares of stock are community property.

On August 23, 1960 W. E. Marshall alone executed the instrument in question. By this instrument it was provided that all the shares of stock should be transferred to the daughter, Erie Darnall Land, as Trustee. However, the instrument by its express terms required the Trustee to obey instructions and directions of W. E. Marshall in regard to management and control of the stocks both as to corpus and income, and that it could be revoked at any time by W. E. Marshall. The instrument further provided that upon the death of W. E. Marshall and the termination of the trust, the property should go to the granddaughter, Linda Darnall. On August 7, 1961 the instrument was amended to provide that upon the death of W. E. Marshall the stocks should go to the daughter, Erie Darnall Land, or if she be not living then to the granddaughter, Linda Darnall, or if she be not living then to the descendants of Linda Darnall, or if there be no such descendants, then to the heirs at law of appellant Viola Walker Marshall and W. E. Marshall.*

* The provisions of the written instrument of August 23, 1960 so far as material to this inquiry may be summarized as follows:

W. E. Marshall, *acting for himself and as manager of the community estate of himself and wife*, transferred to his daughter, Erie Darnall Land, as Trustee the following stocks: (Listing them.)

His purpose was that the stocks should be owned and held by the Trustee for the benefit of himself and wife, and administered as herein provided:

1. The Trustee should own and manage the property, subject to the limitation hereinafter set forth, and should have the right to dispose of or encumber the property in such manner as would be in the best interest of the beneficiaries and most effective in carrying out the purpose of the trust.

2. Similar to the above paragraph 1.

3. The Trustee, at not less than quarterly intervals, must pay over to W. E. Marshall during his lifetime all dividends, interest and profits arising from the securities, deducting only actual expenses for handling the trust property.

4. After the death of W. E. Marshall the Trustee must pay over to Viola Walk-

Pursuant to the terms of the instrument W. E. Marshall endorsed the stock certificates to Mrs. Erie Darnall Land and on September 29, 1960 the books of Franklin Insurance Company were made to show that the stocks had been so transferred.

Thereafter until his death all dividends on the stocks were turned over by Mrs. Land, as Trustee, to W. E. Marshall pursuant to the terms of the trust instrument. Also on two occasions Mrs. Land upon direction of W. E. Marshall sold several shares of the stock and turned the proceeds over to him.

In an affidavit appellant says that she was not aware that her husband had transferred

the stocks to their daughter until shortly before his death in 1965. Becoming suspicious she wrote to Franklin Insurance Company inquiring as to the status of the stocks. In reply she received from the transfer agent of Franklin Insurance Company a letter dated July 16, 1965 informing her that on September 29, 1960 the stock which was held by William E. Marshall had been transferred to Erie Darnall Land as Trustee, closing the account of William E. Marshall. A copy of the letter is included in the record of this case as an exhibit. This letter was dated only three weeks prior to the death of W. E. Marshall.

In her affidavit appellant also states that W. E. Marshall never told her anything

er Marshall during her lifetime said dividends, interest and profits.

5. It was the intention of W. E. Marshall and a condition of the trust that the Trustee must abide by and follow the instructions of W. E. Marshall with reference to the holding, sale, disposition or encumbrance of the securities; also with reference to voting the shares of stock and making her election upon optional proposals.

6. W. E. Marshall further reserved the right to require the Trustee to sell, dispose of or encumber the securities and to pay over to him all sums so realized; *and that she deliver to him a part or all of the securities upon request, even though by such action the trust estate be extinguished and the trust effectively terminated.*

7. If the income of W. E. Marshall from the trust estate and other sources should be insufficient *in his sole judgment* for the maintenance of himself and wife, he, W. E. Marshall reserved the right to require of the Trustee payment out of the principal of such sums as he might direct, either from time to time or at regular intervals.

8. Should W. E. Marshall become incompetent by illness or adversity the principal of the trust property should be invaded to provide for him and his wife.

9. About same as paragraph 8, but for his wife after his death.

10. *Trust to terminate upon death of W. E. Marshall and his wife, and Trustee shall then deliver over the remaining corpus to his granddaughter, Linda Darnall, who shall take the same absolutely; provided, if she be not living then Trustee to turn over the*

*remainder of the trust to the living children of Linda Darnall, and if there be no such children, Trustee shall take property as her own.*

11. If Trustee should die prior to termination of the trust Henry L. Land to be Trustee, if he be then living, otherwise First National Bank in Dallas to be Trustee.

12. No bond required of Trustee.

13. Provisions of Texas Trust Act to govern construction of trust instrument.

14. Intention of W. E. Marshall, and he so instructs Trustee, that when income, and, contingently the principal, of the trust will become payable to his wife following his death, she shall have no right to assign or anticipate any portion of the income or principal, and any attempts by her to do so shall be absolutely void; nor shall the estate be subject to claims of creditors, or judgments against her, or claims of creditors of community estate.

The instrument was acknowledged before a notary public in the form provided for deeds.

Mrs. Erie Darnall Land acknowledged delivery to her of the securities described in the instrument, accepted the trust and agreed to administer the same as Trustee.

The original instrument of August 23, 1960 was amended on August 7, 1961 so that upon the deaths of both W. E. Marshall and wife the Trustee, Erie Darnall Land, instead of the granddaughter, Linda Darnall, should take the remaining corpus *absolutely.* If Trustee not then living, corpus to Linda Darnall *absolutely,* etc.

about their business affairs, or volunteered any information on that subject. She did not see the instrument of August 23, 1960 or the amendment of August 7, 1961 until after the death of W. E. Marshall, when the attorney for Mrs. Erie Darnall Land sent copies of the instruments to appellant's attorney.

In another affidavit appellant swore that after the death of W. E. Marshall there was found in a lock box in the Mansfield State Bank of Mansfield, Texas (to which box only W. E. Marshall and Erie Darnall Land had the right to enter), a letter addressed to her by W. E. Marshall dated August 24, 1964. In this letter W. E. Marshall stated that he was writing the letter to inform her of "the actions I have taken in regard to the property we jointly own, and to assure you that every action was with your welfare in view." He then explained that he had put the property in a trust fund primarily to save inheritance taxes.

The record indicates that Mrs. Erie Darnall Land has faithfully attempted to administer her duties as Trustee. The stocks and money which were not paid over to her father pursuant to the terms of the trust instrument are intact and still on hand. Since the death of W. E. Marshall one check has been received as dividends on the shares of stock. Mrs. Land sent the check in the amount of $896.07 to Mrs. Marshall, who declined to accept it and returned the check to Mrs. Land.

In the petition filed in this case appellees Erie Darnall Land and Linda Darnall were charged with intentional fraud and undue influence in inducing W. E. Marshall to execute the instrument in controversy, but such allegations were withdrawn during the hearing.

In an affidavit Erie Darnall Land, Trustee, stated that in the summer of 1960 her father W. E. Marshall, had come to her home and after discussing her mother's health and actions, asked her to place him in

touch with an attorney who might be able to advise with respect to means to be adopted for looking after himself and her mother. Mrs. Land's husband suggested an attorney with whom her father thereafter conferred, after which her father executed the instrument dated August 23, 1960. At the time her mother was somewhat unstable and given to temperamental outbursts and acts and conduct. Her condition seemed to be growing worse, as it did in subsequent years. Her mother had exceedingly poor business judgment and was easily swayed in business transactions.

## OPINION

In her first point on appeal appellant asserts that the instrument of August 23, 1960 and the amendment of August 7, 1961 by their terms constitute as a matter of law an attempted testamentary disposition by W. E. Marshall of the community property interest of appellant in the shares of stock; therefore the court erred in sustaining appellees' motion for summary judgment and in overruling appellant's motion. We agree with appellant.

■ The instruments plainly undertake to dispose of the shares of stock, including appellant's one-half community interest therein, by providing that after the deaths of both W. E. Marshall and appellant their daughter Erie Darnall Land shall take the corpus of the alleged trust estate *absolutely*, or if she be not living the granddaughter shall take *absolutely*, with further alternative provisions for the testamentary disposition of the property.

■ It has long been the settled law of this state that neither spouse has the right to make a testamentary disposition of the other's interest in their community property. Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402; Smith v. Butler, 85 Tex. 126, 19 S.W. 1083; Rogers v. Trevathan, 67 Tex. 406, 3 S.W. 569; Moss v. Helsley, 60 Tex. 426; Brown v. Pridgen, 56 Tex. 124; Conn v. Davis, 33 Tex. 203; Mealy v. Lipp,

16 Tex.Civ.App. 163, 40 S.W. 824, error ref.; C.I.R. v. Chase Manhattan Bank, 5 Cir., 259 F.2d 231. When such a disposition is attempted even in a will which complies with the statutory requirements in regard to wills (we do not hold that the instruments here in question meet those requirements) the surviving spouse may elect whether to take the benefits provided for him or her under the will, or to renounce those benefits and preserve his or her rights to the community property. See 61 Tex.Jur.2d 426–432 and cases there cited. Certainly appellant Mrs. Viola Walker Marshall has made it very plain that she desires to preserve her title and rights to her community interest in the shares of stock in controversy. Appellant's first point is sustained.

■ In her second point on appeal appellant says that by retaining his rights and preserving his control of the stocks during his lifetime W. E. Marshall prevented the transfer of the stock from being a gift *inter vivos*.

Appellees contend that the instrument in controversy provides for a gift *inter vivos* which the husband, as manager of the community property, had a right to make under authority of Art. 4619, Vernon's Ann.Civ.St.

Again we agree with appellant. To constitute a gift the donor must part with the title to the thing given immediately and unconditionally. It is not a gift if the donor retains the right to use, control and enjoy the property during his lifetime. Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975; Chaison, et al. v. Chaison, et al., 154 S.W.2d 961, Tex.Civ.App., error ref. w. m.; Olive v. Olive, Tex.Civ.App., 231 S.W.2d 480, writ ref. n. r. e.; 27 Tex.Jur.2d 156. In this case W. E. Marshall in express terms retained the right to control and enjoy both the income and the corpus of the estate during his lifetime. Appellant's second point is sustained.

In her third point appellant says that the attempt of W. E. Marshall to convey away virtually all of their community property, including her part, was an excessive and capricious gift by the husband. In sustaining appellant's second point we held that the conveyance did not constitute a gift. Appellant's third point is overruled.

■ The substance of appellant's fourth point is that the disposition made by her husband of her community property interest together with his attempt to dispose of it upon his death was fraud as a matter of law.

As before stated in this opinion appellant has withdrawn her charges of *intentional* fraud. Nevertheless the husband's attempt to make a testamentary disposition of her community estate was wrongful and may under present circumstances be termed a legal, or constructive, though not an intentional fraud. In Speer's Marital Rights in Texas, 4th Ed., Sec. 186, p. 303 it is aptly said, "A husband's conveyance or disposition of the community may be a legal fraud upon the wife's rights though not intended to wrong her. There may be an utter absence of intended fraud, yet the transaction may be voidable." See also Archer v. Griffith, 390 S.W.2d 735, 740, Tex.Sup., 1964; 25 Tex.Jur.2d 618, 619. Appellant's fourth point is sustained.

In her fifth point appellant attacks the instrument of August 23, 1960 on the ground that it creates an "illusory" trust.

In Bogert on Trusts and Trustees, Sec. 211, there is this statement:

"* * * a spouse creates a trust during his life, generally for his own benefit for life, remainder to others, and often reserving large powers, such as the power of revocation, the power to change the beneficiary of the remainder trust, or the power to appoint the interest which is to mature following his death. The question has arisen whether these trusts are 'illusory' as living trusts because of the great amount of control which the settlor has over the subject-matter and therefore are disguised wills, and hence the surviving spouse is entitled to take

the statutory share. In many cases the 'illusory' position has been sustained."

See also Newman v. Dore, et al., 275 N.Y 371, 9 N.E.2d 966, 112 A.L.R. 643; In re Pengelly's Estate, 374 Pa. 358, 97 A.2d 844; and Bolles v. Toledo Trust Co., 144 Ohio St. 195, 58 N.E.2d 381, 157 A.L.R. 1164.

Appellant says frankly that there are no Texas cases in regard to illusory trusts and that she has found none in any other jurisdictions where the community property law prevails. We have already held that by the instrument in question appellant's husband attempted to make testamentary disposition of appellant's community interest in their property, which he had no right to do; and that the instrument did not convey a gift *inter vivos*. In view of such holdings we deem it unnecessary to pass on other aspects of the trust agreement, and we shall not do so.

█ Appellant and appellees are in agreement that there are no fact issues to be resolved in this case. Both sides filed motions for summary judgment. We have concluded that the motion of appellant should have been sustained and that of appellees should have been overruled, and that this court should render judgment accordingly. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400; Lilac Variety, Inc. v. Dallas Texas Co., 383 S.W.2d 193, 196, Tex.Civ.App., 1964, writ ref. n. r. e.

The judgment of the trial court is reversed and judgment is here rendered in favor of appellant Mrs. Viola Walker Marshall that she be awarded title to an undivided one-half interest in and to the 2,562 shares in the corpus of the alleged trust, as of the date of the death of W. E. Marshall together with one-half of the cash received as dividends on such stock since the date of the death of W. E. Marshall.

In reversing the judgment of the trial court and rendering judgment here we make no determination and no comment as to the proper disposition of the other one-half of the corpus and income of the trust estate—that is, the community interest of W. E. Marshall as distinguished from the community interest of the appellant Mrs. Viola Walker Marshall.

Reversed and rendered.