## CHEATHAM et al. v. MANN et al.

### No. 10877.

Court of Civil Appeals of Texas. Galveston.

Nov. 2, 1939.

Rehearing Denied Nov. 23, 1939.

H. J. Hendrix, of Houston, for plaintiffs in error.

Stewart & DeLange, Robert P. Beman, Jr., Albert J. DeLange, and Emory T. Carl, all of Houston, for defendants in error.

GRAVES, Justice.

This much of a statement from the brief of plaintiffs in error, albeit somewhat partisan and advocatory, contains a sort of general resume of both the nature and result of the suit below, and of their contentions as to what should be the disposition of the appeal of it here, to-wit:

"Plaintiffs in error here were the defendants in the trial court below. They are all named in the caption above. All the defendants in error, named in the caption, were the plaintiffs below.

"This is an appeal from the trial court judgment perpetually restraining and enjoining plaintiffs in error from levying an execution, from a judgment in the county court, upon an undivided one-half community interest of Mrs. L. Stepleton in Lot 5, Block 1, Broadmoor Addition in Houston.

"The 61st District Court in granting this injunction, from which this appeal was taken by the defendants below, had the burden of construing the last will of L. Stepleton, deceased, for the purpose of ascertaining the testator's intention, with reference to his attempt to dispose of property not owned by him. That is, the half interest of Mrs. L. Stepleton, in Lot 5, levied upon, Mr. Stepleton left his community interest in the lot to his daughter. There is no dispute about that. The daughter, devisee in her father's will, conveyed the father's half, which she owned, to her sister and brother-in-law, the defendant in error H. W. Mann and wife, Ruth Mann, and they own half of it. But for the other

half, they must rely upon a construction of the provisions of Mr. Stepleton's will. And likewise, this burden of construing the Stepleton will now rests upon this Honorable Court of Civil Appeals, upon which the plaintiffs in error must rely, as to whether or not their County Court judgment can be satisfied, and whether they have a legal right to again levy execution against the undivided community interest in Lot 5 which they contend Mrs. Stepleton still owns.

"The District Court's judgment below was predicated upon the theory of construction that the will of L. Stepleton, deceased, devised the community interest of his surviving wife in Lot 5 to his daughter, Eurah Kate Stepleton, as well as the community interest and estate owned by the testator, in his own right. The Court below construed the will, to the effect that the will called for Mrs. Stepleton to make a legal election, after the death of her husband, as to whether she would give up all the property she owned in her own right, and accept the benefits under the will. And upon this theory of construction of the will, the court found that it would be inconsistent for Mrs. Stepleton to keep what she had, and accept the benefits under the will, in addition thereto. Plaintiffs in error dispute this inconsistency, or that the language used by the testator called for Mrs. Stepleton to make such legal election. But contend that it would be consistent for Mrs. Stepleton to accept the full benefits under the will, and keep her community property, that she owned before her husband's death. In other words, from the provisions of the will, it would not be inconsistent to accept the full benefits to her under the will in addition to what she already owned is the theory of construction of plaintiffs in error, and, therefore, the half-interest levied on in Lot 5 did not affect any title or interest of Mann and wife, whatsoever. But Mann and wife claimed that they own it all.

"The District Court's theory of construction was necessarily also predicated upon the theory that the will could not be so construed, that Mrs. Stepleton could keep her share of the community property, and accept the benefits under the will, in addition thereto. And found that it was impossible to construe the language of the will any other way, other than to call for a legal election, from the plain import and meaning of the words and language used in the will by the testator himself.

And found that, under the terms and provisions of the will that Mrs. Stepleton had no alternative, but was 'forced' to accept the benefits under the will, and give up what she owned in the community property. To which findings of fact and law, defendants duly excepted.

"Plaintiffs in error do not dispute, but on the contrary acknowledge the fact, that defendant in error, the Occidental Life Insurance Company of California, has a valid and subsisting lien on the half-interest in Lot 5, owned by Mann and wife, the half-interest owned by Mr. Stepleton, and, at his death, that the title passed to his daughter. Plaintiffs in error do not claim a judgment lien on that half-interest, neither did they levy an execution upon that property. * * *

"On October 25, 1934, plaintiffs in error here were the plaintiffs in cause No. 37,186, in the County Court at Law, and on that date recovered a judgment against Mrs. Stepleton for $502. That judgment is set out in full, in the evidence in this case now on appeal. Which judgment, in cause No. 37,186, against Mrs. Stepleton, upon which execution was levied against Mrs. Stepleton, and against her community, undivided one-half interest in Lot 5, by plaintiffs in error, upon the theory that her husband's will did not divest her of her said title and interest therein,—was Abstracted, Indexed, and Filed in the Judgment Records of Harris County, in Volume 61, Page 80, on March 28, 1935, upon which $35.00 was paid."

The will of L. Stepleton, of date June 16, 1930, the different constructions of which formed the major basis of the controversy, was this:

"I. It is my desire that all my just debts at the time of my death, including the reasonable expense of my funeral, which shall be of a moderate and simple nature, in accordance with the way I have lived, shall be paid as soon as my executrix hereinafter named, shall deem practicable.

"II. I will, bequeath and devise unto my beloved daughter, Eurah Kate Stepleton, lots numbers 5 and 6, in block number 1 of Broadmoor Addition to the City of Houston, in Harris County, Texas, to be held for her and controlled by her mother. This bequest is made to assure and secure my said daughter in the procuring of a college education, should she desire upon her completion of high school. Should she express a desire or willingness to accept such education, then I advise and direct that her mother, my executrix hereinafter named, shall dispose of said lots at the best obtainable price, either for cash or part cash and part notes, and use such proceeds for the education of our daughter. Should she elect not to accept such education, however, then I direct that said lots be held by her mother until Eurah Kate Stepleton becomes twenty-one years of age, and at that time said lots shall become her property to use, sell or dispose of as she sees fit, but, it is my earnest wish and desire that these lots, or the proceeds therefrom, be used for the education of my said daughter. I also will, bequeath and devise unto my said daughter, Eurah Kate Stepleton, a full size oil painting of my mother, said painting to become her property immediately upon my death.

"III. I will, bequeath and devise unto my beloved wife, May Stepleton, all of the rest and residue of my estate, whether same be real, personal or mixed, and whether same be composed of real estate, improvements thereon, cash in bank, or other things of value, to be hers without limitation or hindrance, to use as she may see fit, without limitation. With reference to the cash in bank, whether same be in the first National Bank, or any other bank, it is my will and desire that same be made available for the use of my wife, immediately upon my death. All of my life insurance policies, I believe, now designate my wife as beneficiary, and I desire to now corroborate and verify this designation, and direct that all such insurance policies be paid to her.

"IV. It is my will, desire and direction that my wife be independent executrix of this my last will and testament, and that as such no bond shall be required of her, and that no further action be had in the probate court of Harris County, Texas, other than the probate of this my last will and testament, and to return an inventory of my estate, after which same shall be dropped from the docket of said Court."

In support of its judgment, the trial court filed findings of fact and conclusions of law, the more material provisions of which may be thus summarized:

The facts: It was found that the lot in controversy, No. 5 in Block 1, of Broadmoor Addition to Houston, had been the community property of Mr. and Mrs. Stepleton; that on May 31, 1931, Mrs. Stepleton filed her application to probate

the quoted will of her deceased husband, and that it was duly probated on June 26 of 1931; that on July 11 of 1931, she filed in the probate court of Harris County an inventory of the property of the estate, which listed all property of the estate as having been the community property of herself and husband, including lots 5 and 6 of such Broadmoor Addition, Block 1, there being, in addition, a number of other real estate holdings in different localities in Houston, also household furniture, giving the values of each separate item, together with the total of all; that with full knowledge that all the property so dealt with by her husband in his will had belonged to the community estate between them, and after having received legal advice to the effect that if she qualified under and administered such will, after herself, accepting the same, she would thereby elect to take under its provisions, rather than at law, she did so accept appointment as independent executrix thereof, expressly declaring her intention to be so bound, took possession of the property bequeathed to herself under the will, and thereafter exercised individual dominion over it; that she not only administered her husband's will as having undertaken to dispose of the whole of the property here in controversy, but further accepted property bequeathed to herself under it, which was of much greater value than that she would have received, had she taken solely as a statutory distributee.

That the abstract of judgment in such cause No. 37,186, in the Harris County Court at Law, upon which alone the plaintiffs in error predicated their claim for a lien upon such Lot 5 of Broadmoor Addition, Block 1, was fatally defective and entailed no such lien, because (a) it did not correctly recite the balance due and owing upon the purported judgment at the time of the recording of such abstract, and (b) because the name of one of the parties-defendant in that cause—Port City Barber Supply Company—was neither shown nor indexed in such abstract.

The law: "1. The Will of L. Stepleton forced his widow to elect whether to reject the bequests and devises to her thereunder, or to take same with the effect that Lots Five (5) and Six (6) above described should pass in fee simple to Eurah Kate Stepleton. Immediately after the death of said L. Stepleton, his widow, Mrs. May Stepleton, elected to take under said Will.

Her election was expressly made after legal advice and was evidenced by her express statement, her application to probate said Will, the taking possession of the property devised and bequeathed to her, same being property to which she would not have been entitled as her share of the community, and same being of value in excess of the property devised to Eurah Kate Stepleton, and her exercise of ownership over such property and her disposing of same. I conclude that the entire fee-simple title to said property, including any and all community interest that Mrs. May Stepleton ever had, passed into Eurah Kate Stepleton at the time of the filing by Mrs. May Stepleton of her application to probate the Last Will and Testament of L. Stepleton.

"2. That the judgment of defendants, and abstracts of said judgment, never constituted any lien upon the property in controversy or any of the property devised to Eurah Kate Stepleton, because such property had passed in fee simple to Eurah Kate Stepleton long prior to the rendition of the judgment or the filing of the abstracts thereof, and long prior to the inception of the transactions out of which such judgment arose. The abstracts of judgment were not properly indexed and recorded to constitute a lien upon any property, and did not adequately describe the judgment rendered, hence could constitute no lien upon any property.

"3. At the date of the institution of the suit, to-wit, August 30, 1937, the plaintiffs, H. W. Mann and wife, Ruth Mann, were the owners in fee simple of the property in controversy, free and clear of any claims or liens of the defendants herein, and subject only to the first, paramount, and superior liens of the plaintiff, Occidental Life Insurance Company of California. That the said H. W. Mann and Occidental Life Insurance Company of California are innocent purchasers for value."

Despite the great length of the record and the briefs, it is obvious that, if either of the learned trial court's stated conclusions to the effect that the will required Mrs. Stepleton to elect whether she would take under it or outside, and that the abstract of judgment declared upon by plaintiffs in error did not fasten a lien against the property in question is sound, the judgment should be affirmed; this court, however, after a careful review, is unable

to find fault with either of such conclusions; indeed, the underlying facts are all either undisputed, or at least fully supported as findings, so that the only remaining question is whether or not the court drew sound conclusions of law to the effect that the plaintiffs in error had no interest in the property, both because it had passed out of their alleged debtor before they filed their declared-upon suit against her, and because they had not complied with the statutory prerequisites to the fastening of a lien upon the property anyway.

This court feels indisposed to undertake a review of the conditions under which, in law, one will be held to have elected to take property under a will, as distinguished from his rights in it at law independent of the will; this for the reason that the general reaches of the law on this subject have already been well defined by our courts, and it seems clear that the controversy now at bar presents nothing new, but rather that its facts bring it clearly within well-settled principles.

In other words, it is thought this will, together with the setting in which it must be examined, plainly classifies it with such cases and other authorities as Lovejoy v. Cockrell, Tex.Com.App., 63 S.W.2d 1009; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Farmer v. Zinn, Tex.Com.App., 276 S.W. 191; Smith v. Butler, 85 Tex. 126, 19 S.W. 1083; Rogers v. Trevathan, 67 Tex. 406, 3 S.W. 569; Speer on Marital Rights in Texas, 3d Ed., Sec. 323, page 399.; 44 Tex.Jur., Sec. 285, page 863, and must be construed as having required the surviving widow to elect or choose between so accepting or renouncing its provisions, rather than with such cases as Sailer v. Furche, Tex.Com.App., 22 S.W.2d 1065, and Avery v. Johnson, 108 Tex. 294, 192 S.W. 542, where under dissimilar facts and not any different principle of law, it was determined that such an election was not required.

The cited Sailer and Avery cases are relied upon as the leading ones in their own behalf by the plaintiffs in error as laying down the principle that a will should not be given the construction that the testator intended to dispose of property not owned by him, unless the language he used is fairly susceptible of no other construction; but, true as that is, it is only half the battle, and does not conclude this controversy in their favor, for this reason: the court in the Furche opinion summed the finally-controlling rule up in this way [22 S.W.2d 1068]: "After all is said, each case must depend upon the ascertainment of the intention of the testator as manifested by the language used by him in making the disposition of the property involved. In determining his purpose and intention we must be guided by the well-established rules laid down by our courts for ascertaining the purpose and intention of the testator."

All the other cases cited hold fast to the rule contended for by plaintiffs in error, as modified by this final criterion quoted from the Furche opinion; so that the inquiry here is simplified into determining the intention of this testator as manifested by his language in this will in making the disposition of Lot 5, Block 1, of Broadmoor Addition; when that is done, it is seen that he first disposed of two specific lots of their community property by the second paragraph of the will, then devised the residue of his estate (being the remaining community property) to his surviving widow by the third paragraph; thus is clearly manifested his intention to treat and devise this entire lot (of which he only owned a one-half community interest), thereby putting his widow, as the co-owner of it with him, to her election as to whether she would take under it; especially so, since by the other provisions he conferred upon her the whole of the remaining community property as compensation for any loss she might sustain by virtue of this specific devise of the two lots to his daughter—Mrs. Stepleton thereby undisputedly receiving property worth several thousand dollars more than she would have received had her husband died intestate; as already indicated, the attending and resulting facts in this instance being as so found below, when the language of this will is read in the light of them, it becomes to this court plain that this cause is, in consequence, ruled by the Dakan, Lovejoy, Butler, Trevathan, and other like cases cited supra; in other words, this testator plainly expressed his intention that in any event Lots 5 and 6, Block 1—the whole of them—should go to his daughter, knowing when he did so, both that he only owned half of them and that his wife had—coincidentally with his—executed her own will to the same effect.

The Trevathan case, cited, is probably more nearly similar to this one in material

facts than any of the others, but this one is clearly brought within the principle that is so stated to be common to them all.

Indeed, the added bequest of the "rest and residue of my estate" to his widow, being a like devise of the community property of them both, by which she was given much that she would not otherwise have acquired, itself called for an election by her as to whether she would take under the will, since the words "my estate" did not restrict such bequest solely to the testator's interest in the community property. Lovejoy v. Cockrell, supra.

Furthermore, since the undisputed showing is that Mrs. Stepleton so elected to take under her husband's will many years before the rendition of either of the judgments the plaintiffs in error claimed under herein, the subsequent filing of abstracts thereof could not affect her title.

■ The stated findings and conclusions of the court to the effect that the abstract of judgment depended upon for the claimed lien was ineffective, because it did not recite the balance due and owing at the time of the recording thereof, because of the absence therefrom of the party-defendant, Port City Barber Supply Company, and because it was not indexed in the name of or against that defendant, are likewise sustained by both the evidence and the law applicable thereto; while some attacks are made against the general sufficiency of the evidence to sustain this and other findings upon which the trial court's judgment was rested, they are only general and do not furnish sufficient ground for overturning any of them; even could it be said there was a dispute in the evidence affecting any one of these recited deficiencies in the abstract, it was no more than such a conflict as came within the trial court's exclusive province to resolve, hence this court could not disturb it. For this reason, it is not deemed essential that the evidence on this feature be further discussed, it being this court's determination that it, in any event, amply supported the findings so returned.

■ As concerns the law, it is long since settled that a judgment-lien is purely statutory, and that the statute must be complied with before the lien will attach, which only takes place from and after the date when the recording and indexing of the abstract are correctly done. 26 Tex.Jur., Sections 518–521, pages 357, 362; Chamlee v. Chamlee, Tex.Civ.App., 113 S.W.2d 290; R.S. Articles 5447, 5448; art. 5449, Vernon's Ann.Civ.St. art. 5449; Askey v. Power, Tex.Com.App., 36 S.W.2d 446; McGlothlin v. Coody, Tex.Com.App., 59 S.W.2d 819; Ainsworth v. Dorsey, Tex.Civ.App., 191 S.W. 594; Barton v. Parks, Tex.Civ.App. 127 S.W.2d 376, writ of error refused.

It follows from these conclusions that the appealed-from judgment should be affirmed; it will accordingly be so ordered.

Affirmed.